

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-08-301-CR

PATRICK EUGENE SANDERS                                              APPELLANT

V.

THE STATE OF TEXAS                                                        STATE

------------

FROM THE 372ND DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

A jury convicted Appellant Patrick Eugene Sanders of burglary of a building and assessed his punishment at seventeen years' confinement. The trial court sentenced him accordingly. On appeal, Appellant contends in seven issues that the evidence is legally and factually insufficient to support his conviction and that the trial court erred by refusing to hold a hearing on his motion for new trial. Because we hold that the evidence is legally and factually

------------

[1]*See* Tex. R. App. P. 47.4.

sufficient to support his conviction and because the trial court has now held a hearing on Appellant's motion for new trial, we affirm the trial court's judgment.

**Legal Sufficiency of the Evidence**

The indictment charges that Appellant "did then and there intentionally, without the effective consent of Grady Anderson, the owner thereof, enter a building not then and there open to the public with intent to commit theft" and, in Paragraph Two, that he "did then and there intentionally or knowingly, without the effective consent of Grady Anderson, the owner thereof, enter a building and did attempt to commit or commit theft."[2]

In his first three issues, Appellant contends that the evidence is legally insufficient to prove intent to commit theft, attempt to commit theft, and a completed theft; that is, he contends that the State failed to prove burglary under any of the three theories. In reviewing the legal sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[3]

In determining the legal sufficiency of the evidence to show an appellant's intent, and faced with a record that supports conflicting inferences, we "must

---

[2]*See* Tex. Penal Code Ann. § 30.02(a)(1), (3) (Vernon 2003) (providing possible theories of burglary).

[3]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

2

presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflict in favor of the prosecution, and [we] must defer to that resolution."[4]  A person commits attempt if "with specific intent to commit an offense, he does an act amounting to more than mere preparation that tends but fails to effect the commission of the offense intended."[5]

Officer Kaare G. Martin testified that about 4:50 a.m. on January 14, 2008, he received a burglar alarm call regarding the Greater St. Paul Missionary Baptist Church in Fort Worth, Tarrant County, Texas.  He testified that the church is in a residential area and that it did not appear that it was in use by its congregation when he arrived.  Martin parked on the west end and then exited his car to explore the building.  He observed no signs of forced entry.  Martin could see inside the building through the exterior glass door and then through a window in the interior wooden door on the northeast side.  Martin saw a light on in the kitchen area, which was on the southeast corner of the building.  In that area, about forty-five feet away from his vantage point, Martin also saw a tall male putting a white plastic bag inside a brown paper bag.  The man was facing Martin.  The brown paper bag was on the table.  Martin testified that it appeared that the man was trying to take items.  Martin walked around to the south side of the building, where he saw light through an open window.  Martin could not see

---

[4]*Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991).

[5]Tex. Penal Code Ann. § 15.01(a) (Vernon 2003).

3

anyone through the window, but he heard "rustling around noises." Martin radioed for backup and waited underneath the window for backup to arrive. He forgot to turn his radio down until after his radio made a "kind of loud" noise.

Martin's backup, Officer Fincher, arrived. Martin then saw the kitchen light go out. He moved to the east side of the building where there was an exterior door. Martin heard what sounded like a lock being unlatched, and then he saw the person he had seen putting the plastic bag into the brown paper bag, Appellant, exit the building through that door. The police had not announced their presence, nor had they done anything to force Appellant out of the building.

Martin was between eight and ten feet from Appellant when he left the building. Martin testified that it had been pretty dark. Martin observed Appellant for "[m]aybe thirty seconds" and did not see a small cut on Appellant's neck. Martin ordered Appellant to the ground. Appellant did not have any property on his person that had been removed from the church, nor did he have any weapons. Officer Fincher came around the building and took Appellant into custody.

Martin then went into the kitchen area where he had seen the light on. He saw the brown paper sack lying on the floor behind the table. He looked inside it and found a white plastic bag. Inside the plastic bag, he saw two bags of potato chips and one large canister of powdered lemonade. He testified that the white plastic bag and the brown paper bag were the same ones that he had seen in Appellant's hand a few minutes earlier.

4

Martin testified that he noticed that the kitchen window was still open and also said that the police searched throughout the church but found no other person, no damage, and nothing else out of the ordinary.

Reverend Grady Anderson, senior pastor of the church, testified that the church was at the eastern edge of the Poly neighborhood and the western edge of the Stop Six neighborhood. He recalled getting a call from the church's burglar alarm company on January 14, 2008, indicating that zone four, which contains the sanctuary, had been breached. Anderson called the police and then met them at the church about twelve minutes later. By that time, the police had apprehended Appellant.

Anderson testified that the church was not being used by its members on that early Monday morning, that the security alarm had been activated, and that no one had permission to be in the church at that time. He specifically testified that Appellant did not have permission to be in the church. Anderson also testified that the purpose of the kitchen was to prepare food for the church's "social functions, for funerals, for vacation Bible school, or for Thanksgiving dinners and other occasions like that." Anderson further testified that the church ran a food bank on site. Finally, he testified that church members and outside donors paid for all the food.

The evidence in the light most favorable to the verdict shows that after a burglar alarm went off, Appellant was spotted holding food that was not his while standing inside a building that he had no permission to be in. Based on the

5

appropriate standard of review, we hold that the evidence is legally sufficient to support Appellant's conviction for burglary. That is, we hold that the evidence is legally sufficient to prove that Appellant "did then and there intentionally, without the effective consent of Grady Anderson, the owner thereof, enter a building not then and there open to the public with intent to commit theft" and "did then and there intentionally or knowingly, without the effective consent of Grady Anderson, the owner thereof, enter a building and . . . attempt to commit . . . theft." We therefore overrule his first and second issues and need not reach his third issue.[6]

**Factual Sufficiency of the Evidence**

In his fourth, fifth, and sixth issues, Appellant contends that the evidence is factually insufficient to prove intent to commit theft, attempt to commit theft, or a completed theft. When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party.[7] We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the factfinder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the factfinder's

---

[6]*See* Tex. R. App. P. 47.1; *Hooper v. State*, 214 S.W.3d 9, 14 (Tex. Crim. App. 2007) ("When the trial court's charge authorizes the jury to convict on more than one theory, as it did in this case, the verdict of guilt will be upheld if the evidence is sufficient on any of the theories.").

[7]*Steadman v. State*, 280 S.W.3d 242, 246 (Tex. Crim. App. 2009); *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006).

6

determination is manifestly unjust.[8]   To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, although legally sufficient, contradicts the verdict.[9]   Unless we conclude that it is necessary to correct manifest injustice, we must give due deference to the factfinder's determinations, "particularly those determinations concerning the weight and credibility of the evidence."[10] Evidence is always factually sufficient when it preponderates in favor of the conviction.[11]   When reviewing a case comprised wholly of circumstantial evidence, the standard of review is the same as it is for reviewing cases in which direct evidence exists.[12]

Appellant contends that Martin's opinion that Appellant was trying to take items was a conclusory assumption.  Yet Martin saw Appellant putting the plastic bag in the paper sack and found the lemonade and chips inside the plastic bag. Appellant also argues that any deduction that Appellant fled when he heard Martin's police radio through the open window is pure speculation.  Yet the jury is

---

[8]*Steadman*, 280 S.W.3d at 246; *Watson*, 204 S.W.3d at 414–15, 417.

[9]*Watson*, 204 S.W.3d at 417.

[10]*Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000); *see Steadman*, 280 S.W.3d at 246.

[11]*Steadman*, 280 S.W.3d at 247; *see Watson*, 204 S.W.3d at 417.

[12]*King v. State*, 29 S.W.3d 556, 565 (Tex. Crim. App. 2000).

7

allowed to make reasonable inferences.[13]  Applying the appropriate standard of review, and deferring to the jury's determinations of the facts, "particularly those determinations concerning the weight and credibility of the evidence,"[14] we cannot conclude that the jury's determination of Appellant's guilt is manifestly unjust.  We overrule Appellant's fourth and fifth issues and do not reach his sixth issue.[15]

**Hearing on Motion for New Trial**

In his seventh issue, Appellant contends that the trial court erred by refusing to hold a hearing on his motion for new trial.  We abated and remanded this case for a hearing on Appellant's motion for new trial, and we have reviewed the record of that hearing.  Appellant's seventh issue is therefore overruled as moot.

---

[13]*Park v. State*, 8 S.W.3d 351, 352 (Tex. App.—Amarillo 1999, no pet.).

[14]*Johnson*, 23 S.W.3d at 9; *see Steadman*, 280 S.W.3d at 246.

[15]*See* Tex. R. App. P. 47.1; *Hooper*, 214 S.W.3d at 14.

8

**Conclusion**

Because we have overruled all of Appellant's seven issues, we affirm the trial court's judgment.

LEE ANN DAUPHINOT
JUSTICE

PANEL:  LIVINGSTON, C.J.; DAUPHINOT and MEIER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  September 30, 2010